IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SYLVIA D.**[1]**,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-704-DWD** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,**[2] | ) | |
| | ) | |
| | ) | |
| **Defendant.** | | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Title II Social Security Disability Benefits ( "SSDI Benefits") pursuant to 42 U.S.C. § 423. For the reasons set forth below, the decision is affirmed.

**PROCEDURAL HISTORY**

Plaintiff applied for Title II SSDI Benefits on April 19, 2022. (Doc. 6-2, pg. 16; Doc. 6-5, pg. 2). After being denied at the initial level (Doc. 6-2, pg. 16; Doc. 6-4, pg. 3) and at the level of reconsideration (Doc. 6-2, pg. 16; Doc. 6-4, pg. 9), Plaintiff requested a hearing before an administrative law judge ( "ALJ"). (Doc. 6-2; pg. 16; Doc. 6-4, pgs. 23-24). The ALJ then issued a decision on June 17, 2024, finding that Plaintiff was not disabled

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court **DIRECTS** the Clerk to substitute Frank Bisignano as the defendant in this suit.

pursuant to 42 U.S.C. § 416(i) and 42 U.S.C. § 423(d). (Doc. 6-2, pgs. 13-31). Plaintiff's request for review was declined by the Appeals Council on April 3, 2025. (Doc. 6-2, pgs. 2-6). Administrative remedies have been exhausted, and a timely complaint filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. Whether the ALJ erred in failing to include limitations from Plaintiff's Medical Determinable Impairment of Adjustment Disorder with Depressed and Anxious Mood; and Generalized Anxiety Disorder.

2. Whether the ALJ erred in limiting Plaintiff to medium work by failing to adequately discuss the evidence that supports her contention of greater limitations.

## APPLICABLE LEGAL STANDARDS

To qualify for SSDI benefits, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is considered disabled if they possess an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) is the plaintiff unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific

[3] [3] The statutes and regulations pertaining to SSDI benefits are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404

impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to establish that jobs existing in significant numbers in the national economy are ones which Plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## STANDARD OF REVIEW

It is important the Court recognize and acknowledge the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide

questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analysis described above. He determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 7, 2021. (Doc. 6-2, pg. 18). Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2026. (Doc. 6-2, pg. 18).

The ALJ found that Plaintiff has severe impairments of "lumbar spine facet arthritis, generalized osteoarthritis; celiac artery narrowing with venous insufficiency; irritable bowel disease and/or Crohn's disease; gastritis and colitis; inflammatory polyarthropathy[4]; and migraine headaches." (Doc. 6-2, pg. 18). The ALJ also found that Plaintiff's medically determinable mental impairments of adjustment disorder with a depressed and anxious mood, and generalized anxiety disorder were non-severe impairments. (Doc. 6-2, pg. 19). At step 3, the ALJ found that Plaintiff does not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1." (Doc. 6-2, pg. 21).

---

[4] Inflammatory polyarthropathy refers to the condition "characterized by inflammation in multiple joints . . .." https://www.sciencedirect.com/topics/medicine-and-dentistry/inflammatory-polyarthropathy.

The ALJ found that Plaintiff has residual functional capacity "to perform medium work as defined in 20 C.F.R. § 404.1467(c) except she can lift and/or carry (including upward pulling) 50 pounds occasionally and 25 pounds frequently." (Doc. 6-2, pg. 22).

The ALJ found that Plaintiff is able to perform "past relevant work as a direct care worker and a utility clerk." (Doc. 6-2, pg. 30). The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 7, 2021, through the date of [the] decision." (Doc. 6-2, pg. 30).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. What follows is a summary of the administrative hearing and the facts drawn from the agency forms. The Court does not separately summarize the voluminous medical records. Those records are addressed, to the extent they bear on Plaintiff's arguments and the Court's conclusions, in the analysis that follows.

### 1. Agency Forms

Plaintiff was born in 1966 and was 58 years old on the date of the ALJ's decision. (Doc. 6-5, pg. 2). Plaintiff said she stopped working on January 7, 2021, because of her conditions. (Doc. 6-5, pg. 3). She worked as a package handler at FedEx from 2018 until January 2021. (Doc. 6-6, pg. 24).

In a Function Report submitted on July 26, 2023, Plaintiff stated that she struggles with bathroom habits due to Crohn's Disease. (Doc. 6-6, pg. 60). She stated that the medication she had been taking for her Crohn's Disease left her with severe, lasting

headaches that rendered her unable to leave her bed for 2-3 days at a time. (*Id.*). She reported that following her contracting COVID in 2020, her neurological symptoms have led to her being in pain constantly without relief. (*Id.*). She stated that the medication her primary physician prescribed causes major side effects making her retain fluid throughout her body. (*Id.*). She reports being unable to sleep some nights due to the pain she suffers. (Doc. 6-6, pg. 61). She reports that she is capable of cleaning a little bit at a time but cannot sit very long because the pain increases while sitting. (*Id.*). She is capable of preparing quick and easy meals three times a week, usually taking her between 1 ½ - 2 hours. (Doc. 6-6, pg. 62). Plaintiff reports going outside around three times daily and is capable of driving when she needs to. (Doc. 6-6, pg. 63). She sometimes attends church with her father. (Doc. 6-6, pg. 64). Plaintiff stated that her condition impairs her lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, memory, concentration, and using her hands. (Doc. 6-6, pg. 65).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on May 13, 2024. (Doc. 6-2, pg. 16). Plaintiff testified that her last day of work at Mount Carmel Public Utility Company was January 7, 2021. (Doc. 6-2, pg. 44). She testified that she attempted one day of work at FedEx but was unable to continue after the end of her first shift due to her symptoms. (*Id.*). The ALJ ceased his questioning after the final question about her job history with Addus as a special needs assistant/caregiver before allowing her attorney to question her. (*Id.*).

Plaintiff's attorney began questioning her and asked her about her last day at work; she testified that she was laid off due to COVID hurting the economy. (Doc. 6-2, pg. 47). She testified that she did not believe she could return to that job at Mount Carmel Public Utility Company due to her complications with Crohn's Disease[5] and severe swelling. (*Id.*). Plaintiff stated that the most severe pain was experienced in her hips, legs, and feet. (*Id.*). She testified that she did not use a mobility assistive device. (Doc. 6-2, pg. 48). She stated that she is able to walk around an eighth of a mile before tiring and needing to rest. (*Id.*). Plaintiff stated that she attempted four different medications prescribed by doctors, but none of them worked. (*Id.*). She said that she is unable to stand still more than a minute or so before tiring. (Doc. 6-2, pg. 49). She testified she is unable to lift things with her hands because they cause her hands to begin shaking uncontrollably. (Doc. 6-2, pg. 50). She testified that her Crohn's Disease flares up every other week. (Doc. 6-2, pg. 52). Plaintiff testified that her conditions cause her to feel overly anxious and make her worry about the financial burden that it had become. (Doc. 6-2, pg. 54). She testified that she suffers from pain due to her varicose veins[6] and responded well to treatment but has been unable to find a provider that takes her insurance since. (Doc. 6-2, pgs. 55-56).

The ALJ began questioning Plaintiff again following her attorney finished his questions. (Doc. 6-2, pg. 56). The ALJ asked how long she was capable of sitting for before her pain worsened to which she responded, "Ten." (Doc. 6-2, pg. 57). Plaintiff testified

---

[5] Crohn's Disease is a type of inflammatory bowel disease "resulting in swelling and dysfunction of the intestinal tract." https://medical-dictionary.thefreedictionary.com/Crohn%27s+disease, visited on September 15, 2026.

[6] Varicose veins are "dilated, tortuous, elongated superficial veins that are usually seen in the legs." https://medical-dictionary.com/varicose+veins, visited on September 15, 2026.

she was able to drive down to the hearing from Evansville, a fifty to fifty-five-minute drive, without stopping once. (*Id.*). Plaintiff clarified that she was able to sit longer than ten minutes at a time if she needed to. (*Id.*). Plaintiff stated the treatment for her left shoulder, therapy and exercises, helped to improve the condition. (Doc. 6-2, pg. 58).

Plaintiff's attorney asked one more set of follow-up questions regarding her ability to sit more than ten minutes while driving. (Doc. 6-2, pg. 58-59). Plaintiff testified that she had lumbar support in her car and had the seat reclined. (Doc. 6-2, pg. 59). She testified that she was able to sit for longer if she was in a reclined position. (*Id.*).

A vocational expert ("VE") then testified at the hearing. After the VE described Plaintiff's past work, the ALJ posed multiple hypotheticals. (Doc. 6-2, pg. 62). The first, based on prior administrative medical findings and Plaintiff's ability to perform medium work, was whether any "of the past work remain[s] as actually or generally performed". (*Id.*). The VE answered that all of the past work would remain unchanged. (*Id.*). The second question was whether the past work remains actually or generally performed if Plaintiff was to perform light work. (Doc. 6-2, pgs. 62-63). The VE answered that the special needs care giver was as actually performed, while the utility clerk was as both. (Doc. 6-2, pg. 63). The third hypothetical posed was whether any of the past work would remain if Plaintiff needed one or two additional unscheduled 15-minute breaks per workday. (*Id.*). The VE answered no to the question in the context of the first and second hypothetical. (*Id.*). The final question posed by the ALJ was:

> Would there be any medium or light unskilled occupations the individual could perform that would require skills acquired in that performance of past work, but no additional skills, with the need for additional breaks.

(*Id.*). The VE responded, "no". (Doc. 6-2, pg. 64). The VE was then asked what she based her testimony on, to which she responded that it was based on her experience in the field. (*Id.*).

Plaintiff's attorney then posed several questions to the VE. Plaintiff's attorney returned to hypothetical two and asked whether either past occupation would remain if the upper left extremity could only occasionally be used for handling, fingering, gripping, and fine fingering with no overhead reaching. (*Id.*). The VE said that neither would remain. (*Id.*). The VE stated that, at the light level, only the position as a greeter would remain. (*Id.*). Plaintiff's attorney then asked whether there would be any jobs if it was lowered to sedentary with the same upper body limitation. (Doc. 6-2, pg. 65). The VE responded that there would be no employment. (*Id.*).

The ALJ then examined the claimant once more following the VE being dismissed. Plaintiff testified that her Crohn's Disease symptoms became severe following her surgery on January 10, 2015. (Doc. 6-2, pg. 66). She testified that her symptoms stayed at the same frequency and intensity during flares since that time. (*Id.*). She stated she had worked with the symptoms from 2016 until COVID, but the bakery where she worked only had one restroom and it was impossible to get to it in time. (*Id.*). She then began employment at the Mount Carmel Public Utility Company wherein the bathroom was right down the hall from where she worked. (*Id.*). The ALJ then concluded the hearing and called no other witnesses. (Doc. 6-2, pg. 67).

## ANALYSIS

### I. MENTAL RESIDUAL FUNCTIONAL CAPACITY EVALUATION

Plaintiff contends that the ALJ erred by failing to include limitations from her psychological impairments in the Residual Functional Capacity ("RFC"). She argues that an ALJ must account for every medically determinable impairment, not only severe impairments. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Additionally, she contends that treatment notes documenting depression required additional discussion and additional restrictions. *See Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). The Court disagrees.

*Villano* holds that the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." 556 F.3d at 563 (citing S.S.R. 96-8p, 1996 WL 374184). That duty, however, is not a requirement that every diagnosed mental condition must appear as a restriction in the RFC. Paragraph B ratings at steps two and three measure the severity of symptoms; they are not themselves an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (distinguishing between a claimant's "functional limitations and restrictions" and their "medically determinable impairment or combination of impairments"); 20 C.F.R. § 404.1520a(d). Mild findings therefore do not automatically translate into functional restrictions. As the Seventh Circuit has explained, an ALJ may reasonably conclude that mild mental limitations "did not warrant or require any functional limitations." *Morales v.* O'Malley, 103 F.4th 469, 471 (7th Cir. 2024).

Here, the ALJ provided the evaluation required by *Villano*. He acknowledged Plaintiff's diagnoses of generalized anxiety disorder and depression. He then assessed what the evidentiary record said about her ability to function. The state agency

psychologist found only mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace and no limitations in social interaction or adapting or managing oneself. The ALJ determined those opinions were persuasive because they were supported by and consistent with the record, and he concluded that Plaintiff's mental impairments caused no more than minimal limitation in workplace functioning and were not severe. Thus, the ALJ did not fail to consider Plaintiff's impairments; he considered them and made a finding about functioning.

Plaintiff's reliance on medical notes from providers indicating that she suffered from depression, does not change the result. "Conditions must not be confused with disabilities." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). "A person can be depressed, anxious, and obese yet still perform full-time work." *Id*. The existence of a diagnosis or of symptoms "does not mean the ALJ was required to find that [the claimant] suffered disabling impairments." *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007). Plaintiff relies on records showing that she suffers from depression. But she does not identify evidence the ALJ overlooked that requires a specific work-related restriction. *Morales*, 103 F.4th at 471.

For these reasons, the Court finds that the ALJ did not err by omitting mental restrictions from the RFC.

## II. Medium Work Evaluation

Plaintiff asserts that the ALJ erred in limiting her to medium work and should have found her capable of only sedentary work. She contends that the ALJ consistently cited to evidence that favored his decision while "either ignoring or minimizing contrary

evidence" (Doc. 8, pg. 7); that contrary evidence being her subjective complaints of back pain and radiculopathy and medical records that predate the later examinations and opinions the ALJ found persuasive. She additionally asserts that the ALJ failed to address consistent findings of reduced lumbar range of motion and her reports of difficulty bathing and grooming. (Doc. 8, pg. 8). For the reasons set forth below, the Court rejects this argument.

When an ALJ formulates an RFC, they must consider the claimant's symptoms in light of the record as a whole. *See* S.S.R. 16-3p, 2017 WL 5180304 at *7-8 (Oct. 25, 2017). An ALJ's assessment of a claimant's subjective symptoms is entitled to significant deference and will be reversed only if "patently wrong"; i.e., that it lacks any explanation or support. *Hess v. O'Malley*¸ 92 F.4th 671, 679 (7th Cir. 2024). Subjective statements about pain or other symptoms are not conclusive evidence of disability and must be considered together with the objective medical evidence and other evidence of record. *See* 42 U.S.C. § 423(d)(5)(A); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). In evaluating subjective symptoms, the ALJ must consider the regulatory factors including, but not limited to, precipitating or aggravating factors; relieving factors; dosage and effectiveness of medications; treatment history; physicians' opinions or observations; prior work record; functional restrictions; and nature and intensity of symptoms. 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c); S.S.R. 16-3p. The ALJ need not discuss every factor or detail, nor address every piece of evidence. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). The decision of the ALJ must simply build a discernible "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

As previously noted, the Court's review of that evidence is deferential. The Court will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's so long as substantial evidence supports the decision. *Warnell*, 97 F.4th at 1052-53; *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). An ALJ's evaluation of subjective symptoms is entitled to significant deference and will be reversed only if it is "patently wrong," meaning, only if it lacks any explanation or support. *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A claimant who contends that the RFC should have included greater restrictions must point to evidence requiring those restrictions. *See Gedatus*, 994 F.3d at 904.

Here, the ALJ properly applied this framework. While Plaintiff complained of greater limitations, the ALJ reasonably determined that her impairments were not as severe as she alleged. He found that the "claimant's statements about the intensity, persistence, and limiting effects" of her symptoms are "inconsistent because the claimant's subjective reports are not fully supported by the objective findings and other evidence in the record." (Doc. 6-2, pg. 27). The ALJ identified specific inconsistencies and then tied them to examination findings, imaging, treatment response, daily activities, and the prior administrative medical findings.

The ALJ acknowledged Plaintiff's reports of difficulty lifting, squatting, bending, standing, reaching, walking sitting, kneeling, and climbing stairs. He also recognized reduced spinal range of motion. He concluded, however, that those complaints were out of proportion to the objective record. For example, despite reports of 10-out-of-10 pain,

treatment providers consistently observed that Plaintiff was not in acute distress. March 2022 pain-management notes documented normal movement of all extremities, normal deep-tendon reflexes, full motor strength, no pain with hip rotation, and negative SI-joint compression, Gaenslen, and Patrick's tests, even though she had lumbar-facet tenderness and some reduced range of motion. (Doc. 6-2, pgs. 25-26). An October 2022 rheumatology examination likewise showed no signs of acute pain, no thoracic or lumbar tenderness, stable upper-extremity range of motion without tenderness, and no localized hip tenderness. (Doc. 6-2, pg. 26). Subsequent examinations in April and September 2023 were similarly unremarkable. Consultative internal medicine findings of full lower-extremity strength and an intact gait further undercut alleged limitations in standing and sitting. (Doc. 6-2, pg. 28). The ALJ was entitled to consider the inconsistency between Plaintiff's subjective complaints and the objective evidence in evaluating her allegations. *See Zoch*, 981 F.3d at 601; *Grotts*, 27 F.4th at 1278; *Richard H. v. Bisignano*, No. 23-cv-14944, 2026 WL 357637, at *5-6 (N.D. Ill. Feb. 9, 2026).

The ALJ also permissibly considered treatment response and activities of daily living. For instance, the ALJ noted that Plaintiff's left-shoulder symptoms improved with occupational therapy in late 2023 and early 2024, with normal strength and range of motion and no pain on examination. (Doc. 6-2, pgs. 26-27). Plaintiff reported driving, shopping in stores, managing her finances, preparing simple meals, sweeping, and washing dishes. Although the ALJ did not expressly discuss difficulty bathing and grooming, he was not required to catalog every reported limitation. *Warnell*, 97 F.4th at 1053. The ALJ further identified an internal inconsistency in Plaintiff's sitting allegations:

she testified that she could sit for only ten minutes, but she sat in a car for 50-55 minutes to attend the hearing without stopping and, on further questioning, admitted she could sit longer than ten minutes if necessary. (Doc. 6-2, pg. 28). Her testimony that she could stand for no more than two minutes was likewise unsupported by the examination findings.

Plaintiff's cherry-picking argument does not alter the result. An ALJ may summarize the record and rely on the evidence he finds most persuasive; he need not recite the file physician-by-physician or address every contrary detail preferred by the claimant. *Warnell*, 97 F.4th at 1053-54. Here, the ALJ recognized reduced lumbar range of motion and Plaintiff's pain complaints. He simply found those findings insufficient, in light of other evidence in the record. Plaintiff's reliance on earlier records that she views as more favorable does not show that the ALJ ignored them. Many of those records predate the later examinations and state-agency assessments on which the ALJ relied. The question is not whether the Court would have weighed the competing evidence differently, but whether the ALJ's reading was reasonable. *Warnell*, 97 F.4th at 1052-53.

The medical opinion evidence also supports the ALJ's decision. State-agency physicians who reviewed the record in December 2022 and September 2023 found that Plaintiff could perform a range of medium work with postural and environmental restrictions. The ALJ explained that those prior administrative medical findings were supported by and consistent with the record, including the later examination evidence. (Doc. 6-2, pgs. 27-28). By contrast, the February 2023 statement that Plaintiff was "unable to work" addressed an issue reserved to the Commissioner and was therefore not

inherently valuable or persuasive. The ALJ also found it inconsistent with that source's own mild examination findings and with the record as a whole. *See* 20 C.F.R. § 404.1520b(c); *Richard H.*, 2026 WL 357637, at *8. Finally, Plaintiff has not identified a supported medical opinion requiring sedentary work, nor has she explained how a sedentary RFC would change the outcome of the disability determination. *See Gedatus*, 994 F.3d at 904.

Therefore, the ALJ built a logical bridge from the objective findings, treatment course, activities, inconsistencies in Plaintiff's statements, and the state-agency assessments to an RFC for medium work with additional restrictions. Substantial evidence supports that assessment. The Court will not reweigh the evidence or substitute its judgment for the ALJ's.

## CONCLUSION

For the aforementioned reasons, the Complaint (Doc. 1) filed by Sylvia D. is **DENIED** and the final decision of the Commissioner of Social Security denying her application for SSDI Benefits is **AFFIRMED.** This action is **DISMISSED** with prejudice,

and the Clerk of the Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: September 30, 2026

DAVID W. DUGAN
United States District Judge